## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**B.D. GOLDFIELDS, LTD.,**
**A Ghanian Corporation,**
**Ex Rel Derivative Action, By**
**Shareholder and U.S. Citizen Paul Oteng**
**3506 Buckman Road, Apt. 303**
**Alexandria, Virginia 22309**

  **AND**


**B.D. GOLDFIELDS, LTD.,**
**A Ghanian Corporation**
**% U.S. Citizen Shareholder; Agent; and**
**Deputy Managing Director**
**Paul D. Oteng**
**3506 Buckman Road, Apt. 303**
**Alexandria, Virginia 22309**

  **V.**

**GOLDEN STAR RESOURCES, LTD.,**
**As Successor by Merger to**
**St. Jude Mineral Resources, Ltd.,**
   **AND**
**ST. JUDE MINERAL RESOURCES, LTD.,**
**Both Canadian Corporations with**
**Principal Place of Business in Colorado**
**Serve for both: Roger Palmer**
**10901 W. Toller Ave., Suite 300**
**Littleton, CO 80127-6312,**
  **DEFENDANTS**

_____

## VERIFIED COMPLAINT

**(Shareholder Derivative Action and Alternative Direct Corporate Action Against
Canadian Gold Prospecting and Mining Corporation Doing Business in the United
States and in The Republic of Ghana; Declaratory Judgement; Injunction; and
Accounting)**

Now comes the plaintiff Paul Oteng, ex rel a shareholder derivative action for the benefit of B.D. Goldfields, Ltd., and now comes the plaintiff B.D. Goldfields, Ltd, in a direct action, who aver on personal knowledge and otherwise upon information and belief, as follows:

<u>Introduction of Parties</u>

1. Shareholder derivative plaintiff Paul Oteng is a citizen of both the United States of America and The Republic of Ghana. Plaintiff Oteng is also a citizen and domiciliary of the Commonwealth of Virginia, residing at 3506 Buckman Road, Apt. 303, Alexandria, Virginia 22309.

2. Since March 31, 1994, Paul Oteng has been a shareholder after purchasing stock for consideration, in B.D. Goldfields, Ltd., a duly organized corporation under the Companies Code of the laws of the Republic of Ghana. Paul Oteng originally owned 5% of the authorized and outstanding B.D. Goldfields, Ltd. stock as of March 31, 1994, but by June 9, 1999, increased his stock holdings to 11% of the authorized and outstanding stock of B.D. Goldfields, Inc.  Plaintiff Oteng was the first person purchasing stock in B.D. Goldfields after founding of the corporation by Fiffi Hayford.

3. Shareholder derivative Plaintiff Oteng has also since 1998 been the Deputy Managing Director of B.D. Goldfields. Mr. Oteng has been authorized by B.D. Goldfields to bring this action in the name of the corporation as plaintiff.

4. B.D. Goldfields, Ltd., was the successor and assignee by name change in 1988

of Dabikrom Integrated Co., Ltd., another Ghanian corporation.

5. For diversity jurisdiction purposes set forth in 28 U.S.C. §1332(a)(2), plaintiff B.D. Goldfields is an alien corporation subject to a foreign state, the Republic of Ghana. B.D. Goldfields has authorized Paul Oteng to register it as a foreign corporation doing business in the District of Columbia and Virginia.

6. From its origin in 1998 through the present, B.D. Goldfields, Ltd., has operated and maintained offices in Accra, Ghana, wholly to administer a large, 72.19 square kilometer gold prospecting concession consisting of 15 prospect permits granted for consideration by the Government of the Republic of Ghana to predecessor Dabikrom in 1988, and then assigned to B.D. Goldfields. This gold prospecting commission is described as AC-2537D/88 (with several related numbers all including "AC-2537D"), and is also known variously as the "Adum Banso/Mpohor" concession because of its geographic region, and is hereafter referred to as the "Adum Banso" or AC-2537D/88 gold concession.

7. The grant of the Adum Banso gold concession by the Government of Ghana to the predecessor of B.D. Goldfields, complied with Ghanian law by granting 90% of the concession to the predecessor of B.D. Goldfields, and reserving 10% of the concession to the Government of Ghana. The concession agreement between the Government of Ghana and Dabrikrom and successor B.D. Goldfields, acknowledged the mining competence of B.D. Goldfields and specified that the costs of locating economical gold deposits would

be born by B.D. Goldfields but would permit B.D. Goldfields to enjoy the prospect of mining and selling gold if economical gold deposits were identified, subject to paying the Government of Ghana 10% of all gold sales commensurate with the 10% of the concession reserved to that sovereign.  The concession also, *inter alia*, authorized B.D. Goldfields to enter into subcontracts and other contracts to prospect and mine the gold and to assign the concession but with prior consent of the Government of Ghana.

8. St. Jude Mineral Resources, Ltd. is a prospecting and mining corporation organized under the laws of Canada but with headquarters and principal place of business in Denver, Colorado, United States of America.  St. Jude conducted transactional and operational mining business in the Republic of Ghana for purposes relevant to this Complaint,  but the contract negotiations related to the allegations herein were controlled from St. Jude's corporate headquarters in Denver, Colorado and were funded with US currency.  For diversity jurisdiction purposes, St. Jude is a citizen of Colorado.

9. Golden Star Resources, Ltd. is a prospecting and mining foreign corporation organized under the laws of Canada but with headquarters in Denver, Colorado, United States of America. At all relevant times for this Complaint, Golden Star conducted transactional and operational mining business in the Republic of Ghana.  In December, 2005, Defendant St. Jude, after tender of stock and cash, merged into Golden Star such that St. Jude is now a wholly owned subsidiary of Golden Star.

10.  For purposes of diversity jurisdiction in 28 U.S.C. §1332(a)(2),  Golden Star is

both an alien corporation and a citizen of Colorado.

11.  At all relevant times, both St. Jude and Golden Star were publicly traded stock corporations trading on the American Stock Exchange and filing required quarterly and annual financial reports with the Securities and Exchange Commission EDGAR system in Alexandria, Virginia and Washington, D.C.

<u>Ultra Vires and Unilateral Actions of Nana Fifi Hayford, Founder of B.D. Goldfields, Ltd.</u>

12. Even though Paul Oteng was a shareholder of B.D. Goldfields since March 31, 1994 and until 1998 was one of just two shareholders in this corporation, the founder and original organizer shareholder of B.D. Goldfields, Nana Fiffi Kakraba Hayford, repeatedly took unilateral and ultra vires actions with respect to the corporation's single asset, the Adum Bansu gold concession. Without consulting the other shareholder Paul Oteng, Hayford on November 15, 1994 attempted to enter into, and signed, a putative contract on behalf of B.D. Goldfields, with a Canadian corporation doing business in Ghana, St. Jude Mineral Resources, Ltd., ("St. Jude"), to sell 80% of the Adum Bansu gold concession to St. Jude for a total of US $250,000.00, payable in four installments extending into April, 1996.

13. Paul Oteng and later purchasing shareholders of B.D. Goldfields timely objected to this unilateral action of Hayford.

Languishing and Evaporation of the November 15, 1994 Putative Contract with St. Jude
Amidst a Challenge to the B.D. Goldfields Concession by Another Ghanian Mining and
<u>Prospecting Company in the Ghanian Courts from 1994 through 2005</u>

14. Between 1994 and 2005, another Ghanian mining and prospecting company,

Hwini-Butre Minerals, Ltd., used the Ghanian trial courts to challenge the 1988 grant of

the Adum Bansu gold concession to B.D. Goldfields by the Government of Ghana, and

claimed the Adum Bansu gold concession had been instead granted to Hwini-Butre

Minerals, Ltd.  Owing to this challenge to B.D. Goldfield's title to the Adum Bansu

concession, St. Jude declined to make the installment payments to B.D. Goldfields

contemplated in the November 15, 1994 contract, and paid Hayford and B.D. Goldfields

only US $12,500 on that 1994 putative contract.

15. On January 28, 2004, the Superior Court of Judicature, Accra, Ghana, R.T.

Nninakwah, a trial court, ruled that the 1988 grant of the Adum Bansu gold concession to

Daibrom/B.D. Goldfields was valid and had not been disturbed by any putative later

concessions or use of concession numbers or descriptions.  The contrary claims of Hwini

Butre Minerals, Ltd, were dismissed. Hwini-Butre Minerals, Ltd, however, appealed this

trial court ruling to the Court of Appeal of Ghana.

16. In the period between 1994 and the Ghanian trial Court ruling in favor of B.D.

Goldfields in January, 2004, St. Jude repeatedly repudiated and disavowed its putative

1994 contract to purchase 80% of the gold concession from B.D. Goldfields.

17. In the period between 1994 up until the trial Court ruling in favor of B.D.

Goldfields in January, 2004, St. Jude actually paid consideration to, and entered into one or more contracts with, Hwini Butre Minerals, Ltd, to purchase that company's asserted rights to the Adum Bansu gold concession validly held by B.D. Goldfields.

18.  On August 26, 2005, while the Hwini Butre appeal of the trial court's rejection of Hwini Butre's claim to the Adum Bansu concession was pending before the Court of Appeal of Ghana, and acting upon invitation of St. Jude,  Fiffi Hayford unilaterally and without notice to or consent from the then five other shareholders of B.D. Goldfields,  attempted to replace parts of the November 15, 1994 expired contract with St. Jude for sale of 80% of the Adum Bansu gold concession. Hayford's unilateral actions were aimed at entering into a new contract with St. Jude for B.D. Goldfields to sell the 80% of the gold concession referred to in the November 15, 1994 agreement to St. Jude for new consideration of US $2 million.

19.  The increased value that St. Jude placed on the disputed Adum Bansu gold concession by August 2005 is reflected in payment at that time of US $5 million by St. Jude to Hwini Butre's affiliate Crew Gold Corporation, which, on information and belief, was also consideration for Hwini Butre to withdraw its appeal of the trial court determination that 80% of the Adum Banso gold concession was owned by B.D. Goldfields.

20. At a special meeting of the shareholders of B.D. Goldfields in Ghana on December 1, 2005 with Paul Oteng participating by telephone from the United States, the

shareholders accepted a confession from Hayford that the August 26, 2005 agreement with St. Jude negotiated without prior consultation and approval by the other shareholders and was not properly entered into. In addition, a majority of the shareholders of B.D. Goldfields voted not to ratify the August 26, 2005 agreement between Hayford and St. Jude.

21.  Beginning in 2005, three shareholders of B.D. Goldfields, Paul Oteng, Gebrand Luttik, and Eric Stevens, challenged Hayford's unilateral and ultra vires actions before the Superior Court of Judicature in the High Court of Justice, Ghana, Commercial Division.

22. On December 5, 2005, Justice Ceclilia H. Sowah of that Court ruled that Hayford's negotiation with St. Jude reflected in the August 26, 2005 agreement was done without obtaining the requisite shareholder agreement for sale of B.D. Goldfield's main asset, the Adum-Banso gold concession, and that Hayford was enjoined and restrained from disposing of the B.D. Goldfield's Adum-Banso gold concession in any matter not complying with the Ghanian Companies Code. Justice Sowah also rejected St. Jude's motion to intervene in the B.D. Goldfields corporate governance litigation, and refused to rule on St. Jude's effort to use that litigation to determine the current validity of the November 15, 1994 agreement between St. Jude and Hayford ostensibly acting for B.D. Goldfields. Justice Sowah December 5, 2005 Order attached as Exh. 1.

23. The putative November 15, 1994 agreement between St. Jude and Hayford for

sale of 80% of the B.D. Goldfield's concession expired and became void after 1994.

24.  As 2006 approached, the price of gold and the potential value of the Adum-Bansu concession had increased by more than 1,000% since St. Jude attempted to purchase 80% of the B.D. Goldfields' concession from Hayford for $250,000 in 1994. By the end of 2006 also, exploratory drilling and prospecting in the Adum-Banso gold concession in just two of the 15 prospect permits comprising the concession, had identified more than 1 million ounces of economically recoverable gold, giving the overall concession a reasonable, potential sales revenue valuation in 2008 of between US $900 million  and US $7 billion.

25. By 2007, Golden Star and St. Jude had determined that the availability of transportation by rail and ship near the Adum-Banso gold concession rendered the project economically viable such that additional resources and expenditures could be dedicated to commencing extraction and sale of gold from the Adum-Banso concession.

26. Any attempt in 2005 or later by St. Jude to resurrect the November 15, 1994 agreement by which St. Jude would purchase 80% of the Adum-Banso gold concession from B.D. Goldfields, was never ratified by a majority or plurality of the shareholders of B.D. Goldfields. Because the Adum-Banso gold concession was the sole asset of B.D. Goldfields, the common and statutory law of corporations of Ghana and all other choice of law venues,  required approval of a majority or, alternatively, two-thirds, of the shareholders of B.D. Goldfields, before this main asset of the corporation could be sold or

disposed of.

St. Jude's Purchase of Outstanding 10% of Gold Concession from B.D. Goldfields in
<u>2006</u>

27. On March 28, 2006, the three shareholders of B.D. Goldfields who had
challenged Hayford's unilateral and ultra vires actions, Paul Oteng, Gebrand Luttik, and
Eric Stevens, entered into a Terms of Settlement that was filed with approved by the
Superior Court of Judicature in the Commercial Court of Justice of the Republic of
Ghana. These Terms of Settlement of March 28, 2006 provided that St. Jude would pay to
B.D. Goldfields the corporation US $2.5 million, plus pay B.D. Goldfields as a
corporation, the further amount of US $1 million if at least 1 million ounces of gold were
extracted within five years after commencement of initial gold production in the
concession area.

St. Jude's Touting the March 28, 2006 Agreement as Acquisition as Dedicated to the
<u>Remaining 10% of the Adum-Banso Gold Concession</u>

28. In quarterly reports to its shareholders filed with the Securities and Exchange
Commission EDGAR system in Virginia and Washington, D.C. and in press releases, St.
Jude repeatedly referred to the March 28, 2006 agreement with B.D. Goldfields as a
purchase of the "remaining ten percent" of the Adum-Banso Gold Concession.

29. Despite having no valid contract or title to the original 80% of B.D.
Goldfield's Adum-Banso gold concession, defendants St. Jude and Golden Star declared

in Ghana and to their shareholders in the United States, Canada and elsewhere, that St. Jude and Golden Star had, as a result of the March 28, 2006 agreement, now had contract and title to the original, 80% Adum-Banso gold concession.

30. Immediately after the March 28, 2006 Agreement with St. Jude, Paul Oteng demanded that B.D. Goldfields take appropriate legal action against St. Jude to confirm by declaratory judgment or other remedy that any earlier, putative agreement between B.D. Goldfields and St. Jude as to the first, 80% portion of the Adum-Banso concession, was void. Oteng emphasized that St. Jude's payment in 2005 of $2.5 million (plus future post-mining bonus payments of $ 1 million) for what St. Jude described as 10% of the Adum Banso gold concession, reasonably called for B.D. Goldfields to demand St. Jude pay at least US $20 million lump sum plus $8 in million future production payments to secure title from B.D. Goldfields for the original 80% of the Adum Banso gold concession.

31. The form of shareholder Oteng's demands to B.D. Goldfields Ltd. to secure payment for its asset of 80% of the Adum Banso gold concession was repeated letters and telephone calls to the managing director of B.D. Goldfields, Fifi Hayford, and to James Abiaduka, Secretary of this corporation in Ghana.

Failure Heretofore by B.D. Goldfields' Managing Director Hayford to Secure Remedy for St. Jude's Exploitation of B.D. Goldfields' gold concession from the Government of Ghana

32. With Canadian corporation St. Jude paying B.D. Goldfields, less than US

$2.75 million for economically recoverable gold potentially worth more than US $7 billion in sales revenue, St. Jude and Golden Star epitomize egregious exploitation of Ghanian mineral assets by a foreign corporation.

33. Despite the glaring lack of consideration paid by St. Jude for the hugely valuable 80% of the Adum-Bansu gold concession owned–as its principal asset--by B.D. Goldfields, Fifi Hayford, the Managing Director and largest shareholder of B.D. Goldfields, failed to provide leadership and take prompt remedial action against St. Jude or Golden Star for the 80% portion of the concession before the other shareholders of this Ghanian corporation.  As a result, B.D. Goldfields as a corporation has not sought declaratory or injunctive relief against St. Jude and now Golden Star, allowing this gross exploitation of Ghanian mineral assets by a foreign corporation–and wasting of B.D. Goldfields' principal asset,  to continue.

34.  In February 2008, Paul Oteng traveled to Ghana and made formal written and oral demand upon the Secretary James Abiaduka and Managing Director Hayford of B.D. Goldfields, to take legal action in the United States against Golden Star to declare void any contract asserted by St. Jude or Golden Star to the original 80% of the Adum-Banso gold concession, and secure adequate consideration for B.D. Goldfield's claim to 80% of the B.D. Goldfields' Adum-Banso gold concession,  the principal and sole asset of B.D. Goldfields, Inc.

35. Because the number of shareholders of B.D. Goldfields is small, the

corporation maintained only a managing director, Hayford, and a deputy managing director, Oteng. A demand for derivative action was properly made on the shareholders directly and not on a board of directors, which did not formerly exist.

36.  At all relevant times in 2008, Oteng requested that the Secretary and Managing Director of B.D. Goldfields circulate Oteng's written and oral demand for action against Golden Star to the entire roster of shareholders of this corporation, which circulation of the demand was done with the following result:

1. Fiffi Hayford, 39%-41% share ownership; not oppose derivative and direct action; alternatively, abstain;

2. Paul Oteng, 11%, affirmative;

3. Gebrand Luttik, citizen of The Netherlands; 10%; affirmative

4. Rockson Addison; 5%; did not respond

5. Eric Stevens, citizen of The Netherlands, asserts ownership of 2% of shares but has been absent from Ghana; did not respond

6. Dr. Gentry Fuh; geologist; citizen and resident of Cameroon; title to 28% shares subject to dispute by person who purportedly loaned money to Fuh for purchase of 28%; Fuh did not respond;

7. James Ampah-Kwoffie, died 2004; heirs asserting ownership of his 5% of shares did not respond.

37.  As a result of shareholder Oteng's demand, more than 60% of the owned shares supported and embraced the demand of Oteng that B.D. Goldfields by shareholder derivative and direct action seek declaratory judgment in a United States court that:

1.  the original 80% of the Adum Banso gold concession owned by B.D. Goldfields had not been contractually sold to St. Jude; Golden Star, or any other entity;

2. Fiffi Hayford was not authorized by B.D. Goldfields as a corporation to sell 80% of the Adum Banso gold concession.

Direct Payments by St. Jude to Fiffi Hayford, Managing Director of B.D. Goldfields

38. At various relevant times, Fiffi Hayford received cash or stock payments tendered by St. Jude to secure his cooperation and putative standing to negotiate with St. Jude about B.D. Goldfields' Adum Banso gold concession. Some or all of these payments to Fiffi Hayford were not presented to B.D. Goldfields the corporation and were not distributed to the other shareholders.

39. Because at all relevant times the 80% of the Adum Banso gold concession was the principal and, with the remaining 10%, the sole asset of B.D. Goldfields, Fiffi Hayford acted ultra vires and contrary to the law of corporations and fiduciary dealings, when he attempted to sell the principal asset of B.D. Goldfields to third parties in the absence of formal approval by a majority or higher percentage of the shareholders. Any receipts or releases signed by Hayford after receipt of payments from St. Jude, are invalid to bind B.D. Goldfields.

40. Because the majority, or higher percentage, of shareholders of B.D. Goldfields never considered or approved an informed offer to purchase 80% of the corporation's principal asset in the form of the Adum Banso gold concession, B.D. Goldfields has not,

pursuant to the law of corporations, authorized or ratified a sale of this 80% of the gold concession.

41. This allegation is made irrespective of choice of law.

Compliance with Shareholder Derivative Procedures

42. Shareholder Paul Oteng was a shareholder of B.D. Goldfields since March 31, 1994 through the present. Despite being one of two shareholders of B.D. Goldfields in November 1994 when Fiffi Hayford attempted to enter into and sign a contract selling 80% of the gold concession to St. Jude, Oteng was not consulted with by Hayford about the planned sale; did not vote to approve it; and did not share in any installment payments that St. Jude made to Hayford in 1994 and thereafter.

43. Shareholder Oteng's demand under shareholder derivative law of any chosen forum that B.D. Goldfields take action against St. Jude to declare as void ab initio any title or purchase rights of St. Jude or its successor Golden Star to the 80% Adum Banso gold concession of B.D. Goldfields, is not a collusive action to confer jurisdiction on this Court which it would otherwise not have.

44. The particularity of the efforts made by shareholder Paul Oteng to obtain the action requested of B.D. Goldfields is set forth in ¶s 1though 43, supra. Any failure to obtain a response from a shareholder is explained by the shareholder's absence from Ghana when the demand was made.

45. In the case of Fiffi Hayford, the managing director, founder, and 39% to 41%

shareholder of B.D. Goldfields, the unilateral and ultra vires actions taken by Hayford from 1994 through 2004, and the acceptance of direct payments to him personally by St. Jude, excuse Hayford's alternative position to abstain to the demand for declaratory and injunctive relief by B.D. Goldfields against St. Jude and its successor Golden Star.

46. Shareholder Hayford voted no opposition to the demand by shareholder Oteng that B.D. Goldfields take action in the Courts of the United States against St. Jude and Golden Star with respect to payment of proper consideration for 80% of the Adum Banso gold concession.

47. Sufficient affirmative authorization from the responding shareholders to shareholder Oteng's demand for action against St. Jude and Golden Star was achieved in March 2008 that B.D. Goldfields can be styled as a plaintiff in this shareholder derivative action. The action pleaded in this Complaint fulfills the corporation's responsibility for democratic, deliberated, and good faith disposition of 80% of its sole and principal asset, the Adum Banso gold concession.

48. Alternatively, shareholder Oteng fairly and adequately represents the interests of the other similarly situated shareholders of B.D. Goldfields and is a suitable plaintiff to bring this shareholder derivative action on behalf of B.D. Goldfields against St. Jude and Golden Star.

<u>Jurisdiction and Venue</u>

49. Jurisdiction of this Court is founded upon the diversity of citizenship

provisions in 28 U.S.C. §1332 (a)(2), in that plaintiff is an alien corporation suing defendant Golden Star/St. Jude, which though Canadian corporations, are each for diversity jurisdiction purposes, a citizen of Colorado because of each corporation's principal place of business in that state. 28 U.S.C. §1332[c].

50. Venue is appropriate in this Court because an alien corporation like defendant Golden Star/St. Jude can be sued in any district. 28 U.S.C.§1391(d). Venue is also preferable in this district because it has been selected by the plaintiff's deputy managing director and representative in the District of Columbia and is proximate to his Virginia domicile. In addition, because the relief sought in this Complaint relates principally to contract formation matters directed from defendants' headquarters in the United States, and does not pertain to exploration or prospecting operations in Ghana,  no other venue offers a superior or more convenient situs for adjudication of the remedies demanded. Discovery outside the United States will be minimal or entirely unnecessary.

<u>Choice of Law</u>

51. This Complaint should be adjudicated using the law of the forum. Because the law of corporations and contracts of competing fora such as the Republic of Ghana; the State of Colorado; or of Canada, are not materially different for adjudication of the remedies demanded, there is no valid reason to avoid use of this forum's law.

<u>Direct Action by B.D. Goldfields Against St. Jude and Golden Star</u>

52. Paragraphs 1 through 51 are incorporated by reference.

-17-

53.  By special polling of all responding shareholders in March 2008, the Secretary of B.D. Goldfields, and B.D. Goldfields as a corporation, authorized shareholder and deputy managing director Paul Oteng, a citizen of the United States, to be agent of the corporation in the United States to bring a direct action for that corporation in the courts of the United States against St. Jude and Golden Star, Canadian companies with principal place of business in Colorado, and to declare as void any putative contract between B.D. Goldfields and St. Jude or Golden Star for purchase of, or acquisition of title to, 80% of the Adum Banso gold concession originally granted to B.D. Goldfields.

<u>Count 1: Declaratory Judgment</u>

54. Paragraphs 1 through 53 are incorporated by reference.

55. The Court should declare that any putative contract, sale, title, or agreement claimed by defendants St. Jude or Golden Star as to 80% of the B.D. Goldfields' Adum Banso gold concession, including but not limited to the November 15, 1995 putative contract,  is void;  that neither defendant St. Jude nor Golden Star has any title, contract, or ownership rights to 80% of the B.D. Goldfields' Adum Banso gold concession; and that neither defendant can object to: B.D. Goldfields' assertion of title and ownership to the original 80% of the Adum Banso concession; offering sale of the 80% to arms length buyers; or taking other action with respect to the 80% Adum-Banso gold concession consistent with the corporation's purpose and democratic operating procedures.

56. This demand for Declaratory Judgment comports with all prerequisites for

affording plaintiff relief, in that the facts present a mature and justiciable controversy that will, if uncorrected, sustain an egregious exploitation of mineral assets of the Republic of Ghana by foreign corporations that are subject to the jurisdiction of this Court. In addition, the cause is not excepted from declaratory relief; is within the Court's discretion and authority; is practical and wise for judicial administration; will settle and clarify a material dispute between the parties; and does not interfere with any proceeding in another tribunal.

### Count 2: Preliminary Injunction

57. Paragraphs 1 through 56 are incorporated by reference.

58. With entry by the Court of declaratory judgment that neither St. Jude nor Golden Star has contract or title rights to 80% of B.D. Goldfields' Adum Banso gold concession, St. Jude and Golden Star should be enjoined from conducting further drilling, prospecting, mining, or extraction with respect to this acreage and minerals.

59. Because such injunction would be entered after declaratory judgment in favor of B.D. Goldfields, no bond should be required of plaintiffs for seeking this injunction.

### Count 3: Accounting

60. Paragraphs 1 through and including 59 are incorporated by reference.

61. Defendants St. Jude and Golden Star conducted business as to the Adum-Banso gold concession with Fifi Hayford, managing director and shareholder of B.D. Goldfields, while Hayford was acting unilaterally and ultra vires. Plaintiff demands an

accounting with dates of all cash and stock paid to Fifi Hayford, nominees or delegees of

Fifi Hayford, or paid to B.D. Goldfields through Fifi Hayford, by defendant St. Jude or

defendant Golden Star, from June 1, 1994 to date.

<u>Verification</u>

I hereby swear as U.S. Citizen and declare under penalty of perjury, that the
allegations in this Complaint are true and correct to the best of my information and belief.
I verify all such allegations.

_____

Paul Oteng

Respectfully submitted
_____/s/_____

John S. Lopatto III, Member Bar U.S. District Court
1776 K St., N.W., Suite 200
Washington, D.C. 20006
202-861-5800/FAX: 202-861-5802
Email: Jlopatto3@aol.com
Attorney for Plaintiff

May 2008

IN THE SUPERIOR COURT OF JUDICATURE,
IN THE HIGH COURT OF JUSTICE, GHANA
(COMMERCIAL DIVISION) HELD ON MONDAY
THE 5TH DAY OF DECEMBER, 2005. BEFORE HER
LORDSHIP MRS CECILIA H. SOWAH J.

SUIT NO. ACC/6/05

IN THE MATTER OF THE COMPANIES CODE, 1963 (ACT 179)

AND IN THE MATTER OF B.D. GOLDFIELDS LIMITED

AND IN THE MATTER OF AN APPLICATION BY GEBRAND LUTTIK, PAUL OTENG ERIC STEVENS
PURSUANT TO SECTION 217 OF THE COMPANIES CODE, 1963 (ACT 179).

# R U L I N G

The main issue in this application is whether or not the purported sale, transfer and disposal and/or assignment of the Companies main asset viz its mining concession without reference to the members in general meeting in accordance with Section 202(1) of the Companies Code 1963(Act 179) ought to be declared null and void.

The most potent argument against the application is that the failure to obtain an ordinary resolution before the purported disposal can easily be ratified and therefore there is no need declaring the transfer null and void.

Counsel for the respondent prays that the Company be given the opportunity to ratify the sale transaction which is dated 26th August 2005 and exhibited as "A" to their affidavit opposing the application. It is contended that the transaction was entered into in good faith and in the best interest of the company to give shareholders some value.

The scope of Section 217 is clear. The commentary to Section 217 in Gowers Companies Code Report expresses the view that there is one anomalous exception to the right of an individual shareholder to bring an action against the Company to restrain it from acting or to declare ineffective action already resolved upon. It states as follows at page 159:

"If the act in question is an irregularity which could be

CERTIFIED TRUE COPY

REGISTRAR

COMMERCIAL DIVISION OF THE
HIGH COURT, ACCRA

PLAINTIFF'S
EXHIBIT
1

individual member may not sue.  The stated reason for
this exception is that "if the thing complained of is a
thing which in substance the majority of the Company
are entitled to do, or if something has been done
irregularly which the majority of the Company are
entitled to  do regularly, or if something has been done
illegally which the majority of the Company are entitled
to do legally, there can be no use having litigation about
it the ultimate end of which is only that a meeting has
to be called and then ultimately the majority gets its wishes"
- **per Mellish LJ in Mac Dougall v Gardner(1875)1Ch.D at 25.**

The application is essentially a complaint about the disposition of the main
asset of the company in an illegal manner by failure to comply with certain
provisions of the Code and the regulations of the Company.  It is not a
complaint about an ultra vires act.  Counsel did attempt to argue that the
company had exceeded its powers by purporting to sell assets but later
conceded that he was not relying heavily on Section 25 of the Code.

Issues have also been raised as to whether St. Jude Resources (Gh)
Limited a third party which dealt with the Company ought to be afforded
protection.  I refused the application by St. Jude to join because in my
opinion, the hearing of this Section 217 application is not the proper forum
to litigate the dispute between the respondent and St. Jude as to the
current validity of a 1994 agreement which according to St. Jude entitles it
to 80% interest in the Company.

The sole issue in this application is whether or not the transactions
involving the purported disposal to St. Jude and/or others breached the
regulations of the Company, and if it did, whether the 3rd parties should be
afforded protection.

The answer to the first part of the question is a clear "yes".  Mr. Hayford
the Chairman and Managing Director of the Company admits that when he
signed the agreement of 26th August 2005 he had not obtained the
requisite shareholders agreement for the

are therefore entitled to an order restraining the Company acting by the said Mr. Hayford or other servants from acting in such a manner that is not in conformity with the regulations or the Code.

I accordingly grant relief 1 and I do hereby order that B.D. Goldfields Limited acting by Nana Fiifi Krakaba Hayford or any of its servants or agent is hereby restrained from in any way disposing of the main asset of the Company being the Adum-Banso/ Mpohor concession issued under prospecting Licence No. AC 2537D/88 to St. Jude or any other party in a manner that is illegal and in contravention of the regulations of the Company and the provisions of the Companies Code 1963 (Act 179.)

With respect to relief 2, it is my view that as the Company can validly regularize or reject the transaction, it ought to be given the opportunity to so decide. The facts and the positions of the parties having now been brought into the open by this application, the majority shareholders ought to be in a better position to decide whether they wish to ratify the agreement.

I will accordingly stay a final decision on the 2nd relief for 4 weeks to enable the Company determine whether they wish to ratify.

I will dismiss the 3rd relief seeking an order for the company to render account and to convene an Annual General Meeting (AGM) as those reliefs are not warranted under or by the procedure under Section 217

I will defer award of costs until the parties appear before me on the adjourned date of 11th January 2006.

(SGD) MRS CECILIA H. SOWAH J.
JUSTICE OF THE HIGH COURT

**COUNSEL**

**CHARLES ZWENNES** with James Addo for Applicant/Respondant
**MICHAEL FOLI** with Maxwell Logan for Respondent/Respondant

CERTIFIED TRUE COPY
REGISTRAR
COMMERCIAL DIVISION OF THE
HIGH COURT, ACCRA

3

Case 1:08-cv-00916 Document 1-3 Filed 03/29/2008 Page 3 of 4

| ☐ **G. Habeas Corpus/2255** | ☐ **H. Employment Discrimination** | ☐ **I. FOIA/PRIVACY ACT** | ☐ **J. Student Loan** |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment<br>(criteria: race, gender/sex, national origin, discrimination, disability, age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions<br>(if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ☐ **K. Labor/ERISA (non-employment)** | ☐ **L. Other Civil Rights (non-employment)** | ☒ **M. Contract** | ☐ **N. Three-Judge Court** |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☒ 190 Other Contracts<br>☐ 195 Contract Product Liability | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

☒ 1 Original Proceeding  ☐ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify)  ☐ 6 Multi district Litigation  ☐ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

Declaratory Relief, 28 U.S.S.C. Sec. 2201; Diversity jurisdiction, 28 U.S.C. Sec. 1332

**VII. REQUESTED IN COMPLAINT**  CHECK IF THIS IS A CLASS ☐ ACTION UNDER F.R.C.P. 23  DEMAND $  Check YES only if demanded in complaint  JURY DEMAND: ☐ YES  ☒ NO

**VIII. RELATED CASE(S) IF ANY**  (See instruction)  ☐ YES  ☒ NO  If yes, please complete related case form.

DATE  5-29-08  SIGNATURE OF ATTORNEY OF RECORD  _J.S. Fegatto_  DC BAR 965426

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.  COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.  CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.  CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.  CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.  RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.

JS-44
(Rev. 2/01 DC)

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| B.D. Goldfields, Ltd.<br>&Paul Oteng | Golden Star Resources, Ltd.<br>St. Jude Mineral Resources, Ltd. |
| (b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF _____<br>(EXCEPT IN U.S. PLAINTIFF CASES) | COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____<br>(IN U.S. PLAINTIFF CASES ONLY)<br>NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF<br>THE TRACT OF LAND INVOLVED |
| (c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)<br>**JOHN S. LOPATTO III**   202-861-5800<br>ATTORNEY AT LAW<br>1776 K STREET N.W., SUITE 200<br>WASHINGTON, D.C. 20006 | ATTORNEYS (IF KNOWN) |

## II BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

☐ 1 U.S. Government
Plaintiff

☐ 3 Federal Question
(U.S. Government Not a Party)

☐ 2 U.S. Government
Defendant

☒ 4 Diversity
(Indicate Citizenship of
Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ☐ 1 | ☐ 1 | Incorporated or Principal Place<br>of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place<br>of Business in Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a<br>Foreign Country | ☒ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV.  CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

☐ **A. Antitrust**

☐ 410 Antitrust

☐ **B. Personal Injury/Malpractice**

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

☐ **C. Administrative Agency Review**

☐ 151 Medicare Act

Social Security:
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)

Other Statutes
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If
Administrative Agency is Involved)

☐ **D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may
be selected for this category of case
assignment.

*(If Antitrust, then A governs)*

☐ **E. General Civil (Other) OR**   ☐ **F. Pro Se General Civil**

Real Property
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

Personal Property
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property
Damage
☐ 385 Property Damage Product
Liability

Bankruptcy
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

Prisoner Petitions
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

Property Rights
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

Forfeiture/Penalty
☐ 610 Agriculture
☐ 620 Other Food & Drug
☐ 625 Drug Related Seizure of
Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational
Safety/Health
☐ 690 Other

Federal Tax Suits
☐ 870 Taxes (US plaintiff or
defendant
☐ 871 IRS-Third Party 26
USC 7609

Other Statutes
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation
☐ 470 Racketeer Influenced & Corrupt
Organizations
☐ 810 Selective Service
☐ 850 Securities/Commodities/
Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination
under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not
administrative agency review or
Privacy Act)